**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ELVA CONSTANCE CUNNINGHAM
and DARIA ROSS,

                      Plaintiffs,

        v.

GENERAL MOTORS LLC; UWE
ELLINGHAUS, MELODY LEE,
NATHAN TAN, SHANNON E.
WALLACE, TONYA HALLETT, JOHN
and JANE DOE, 1, 2, 3, etc.,

                    Defendants.

Civil Action No. 20-cv-03097-AKH

*Electronically Filed*

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT UWE ELLINGHAUS'S MOTION TO DISMISS

      Defendant Uwe Ellinghaus ("Ellinghaus"), a German citizen who has lived in Germany

since February 2018, by and through his attorneys Morgan, Lewis & Bockius LLP, respectfully

submits this memorandum of law in support of his motion to dismiss the Complaint filed by

Plaintiffs Elva Constance Cunningham ("Cunningham") and Daria Ross ("Ross") (collectively,

"Plaintiffs") in the above-captioned matter for failure to state a federal claim against him, lack of

personal jurisdiction and insufficient service of process under Rules 12(b)(6), 12(b)(2) and

12(b)(5) of the Federal Rules of Civil Procedure (the "Rules").

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................. 1

II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................ 2

III.    ARGUMENT ..................................................................................................... 5

    A.      There Is No Basis for Individual Liability under Most of Plaintiffs'
        Federal Claims, and Such Claims Should Be Dismissed under Rule
        12(b)(6). ........................................................................................................ 5

    B.      Dismissal under Rule 12(b)(2) Is Proper Because Asserting Personal
        Jurisdiction over Dr. Ellinghaus Would Not Comport with Due Process. ........... 6

        1.      The Burden Imposed on the Defendant .................................................. 8

        2.      The Interests of the Forum State .......................................................... 9

        3.      Plaintiffs' Interest in Obtaining Relief.................................................. 10

        4.      The Judicial System's Interest in Efficiency ......................................... 10

        5.      Substantive Social Policy..................................................................... 11

    C.      Dismissal under Rule 12(b)(5) Is Proper as Service via Email or Mail in
        Germany Is Not Sufficient................................................................................ 12

        1.      Alternative Service by Mail or Email Is Improper Where Plaintiffs
            Have Not Attempted to Effectuate Service under the Hague
            Convention ......................................................................................... 12

        2.      Alternative Service by Mail Is Not Permissible in Germany under
            Rule 4(f)(3) Because It Violates the Hague Convention ......................... 14

IV.     CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Aerofoil Techs., AG v. Todaro*,
    No. 11-cv-9505, 2012 WL 299959 (S.D.N.Y. Jan. 31, 2012) ...........................................13, 14

*Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*,
    480 U.S. 102 (1987)...........................................................................................................8, 11, 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................................................................5

*Bernheim v. N.Y.C. Dep't of Educ.*,
    No. 19-cv-9723, 2020 WL 4383503 (S.D.N.Y. July 31, 2020).........................................5, 10

*Buccellati Holding Italia SPA v. Laura Buccellati, LLC*,
    935 F. Supp. 2d 615 (S.D.N.Y. 2013).......................................................................................6

*Cayemittes v. N.Y.C. Dep't of Hous. Pres. & Dev.*,
    641 F. App'x 60 (2d Cir. 2016) ............................................................................................5, 10

*Darden v. DaimlerChrysler N. Am. Holding Corp.*,
    191 F. Supp. 2d 382 (S.D.N.Y. 2002)....................................................................................12

*Devi v. Rajapaska*,
    No. 11-cv-6634, 2012 WL 309605 (S.D.N.Y. Jan. 31, 2012) ..............................................13

*Donahue v. Asia TV U.S.A., Ltd.*,
    208 F. Supp. 3d 505, 512 (S.D.N.Y. 2016)...............................................................................5

*Farzan v. Wells Fargo Bank, N.A.*,
    No. 12-cv-1217, 2013 WL 2641643 (S.D.N.Y. June 11, 2013) ...............................................5

*Int'l Shoe Co. v. State of Wash.*,
    326 U.S. 310 (1945).......................................................................................................................7

*Ivanov v. N.Y.C. Transit Auth.*,
    No. 13-cv-4280, 2014 WL 2600230 (S.D.N.Y. June 5, 2014) ..........................................5, 10

*Live Brands Holdings, LLC v. Gastronomico Gracias A Dios*,
    No. 1:20-cv-01213, 2020 U.S. Dist. LEXIS 84584 (S.D.N.Y. May 13, 2020) ................13, 14

*Mende v. Milestone Tech., Inc.*,
    269 F. Supp. 2d 246 (S.D.N.Y. 2003).......................................................................................2

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
 84 F.3d 560 (2d Cir. 1996) ........................................................................6, 8, 10, 12

*Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*,
 No. 03-cv-1681, 2004 WL 2199547 (S.D.N.Y. Sept. 29, 2004) ..............................11

*Outdoor Partners LLC v. Rabbit Hole Interactive Corp.*,
 No. 13-cv-1797, 2013 WL 6503525 (S.D.N.Y. Dec. 9, 2013) ...........................7, 10

*Realuyo v. Villa Abrille*,
 No. 01-cv-10158, 2003 WL 21537754 (S.D.N.Y. July 8, 2003), *aff'd sub*
 *nom., Realuyo v. Abrille*, 93 F. App'x 297 (2d Cir. 2004) ................................7, 8, 9

*RLB & Assocs., Ltd. v. Aspen Med. Pty.*,
 No. 2:15-cv-123, 2016 WL 344925 (D. Vt. Jan. 27, 2016) .................................8, 10

*Seabrooks v. Brown*,
 No. 18-cv-10155, 2019 WL 5450445 (S.D.N.Y. Oct. 24, 2019)..............................6

*Senese v. Hindle*,
 No. 11-cv-0072, 2011 WL 4536955 (E.D.N.Y. Sept. 9, 2011) ................................6

*Sulzer Mixpac AG v. Medenstar Indus. Co.*,
 312 F.R.D. 329 (S.D.N.Y. 2015) ...........................................................................14

*Weerahandi v. Am. Statistical Ass'n*,
 No. 14-cv-7688, 2015 WL 5821634 (S.D.N.Y. Sept. 30, 2015) ...........................2, 7

**Statutes**

Age Discrimination in Employment Act ("ADEA") ...................................................5, 10

Americans with Disabilities Act ("ADA") .................................................................5, 10

Rehabilitation Act .......................................................................................................5, 10

Title VII of the Civil Rights Act ("Tile VII")..............................................................5, 10

**Other Authorities**

CPLR § 301.........................................................................................................................6

CPLR § 302.....................................................................................................................6, 7

New York State Exec. Ord. No. 205.1..............................................................................11

Fed. R. Civ. P. 4...................................................................................................12, 13, 14

Fed. R. Civ. P. 12(b)(2)......................................................................................................2, 6

Fed. R. Civ. P. 12(b)(5)................................................................................................2, 12

Fed. R. Civ. P. 12(b)(6)................................................................................................5, 6

I.    **<u>INTRODUCTION</u>**[1]

Plaintiffs allege various employment discrimination and common law claims under city, state, and federal law against Defendants General Motors LLC ("GM"), Dr. Uwe Ellinghaus, Melody Lee ("Lee"), Nathan Tan ("Tan"), Tonya Hallett ("Hallett"), and Shannon Wallace ("Wallace") (collectively, "Defendants"), based on a period when these individuals worked for GM's Cadillac brand while it was temporarily headquartered in New York City.  Putting aside that there is no basis for individual liability for purposes of most of Plaintiffs' federal claims, the key difference between Dr. Ellinghaus—a German citizen—and the other individual defendants is that Dr. Ellinghaus has not worked in the United States since November 30, 2017, or lived in the United States since February 2018.  He is not a U.S. citizen, owns no property in the U.S., and has no present intention to return to the U.S.  As much as Plaintiffs may want to force Dr. Ellinghaus to be haled into a U.S. Court across the Atlantic Ocean to respond to their conclusory and threadbare claims stemming from their separations from GM in June 2017 (Cunningham) and December 2017 (Ross), such an exercise does not comport with Constitutional Due Process.

To survive a motion to dismiss for lack of personal jurisdiction, it is Plaintiffs' burden to make a prima facie showing of personal jurisdiction.  Plaintiffs cannot meet their burden here because it would be fundamentally unfair to force Dr. Ellinghaus, a foreign citizen who has not worked in the U.S. for the past three (3) years, to defend a lawsuit in New York where there is no individual liability on most of Plaintiffs' federal law claims, Plaintiffs have offered no evidence that they currently reside in New York, no evidence that they would be unable to obtain full and complete relief were Dr. Ellinghaus removed from this action, no evidence that the majority of

---

[1] By making this motion, Dr. Ellinghaus does not concede, and specifically denies, that he was properly served or that he submits to the jurisdiction of this Court.  Dr. Ellinghaus does not waive, and specifically reserves, any and all defenses and arguments based on service of process and personal jurisdiction (including those set forth in this motion), as well as to all of Plaintiffs' claims against him.

the relevant witnesses or evidence with respect to claims against Dr. Ellinghaus is likely to be located in New York, and no evidence that it is in the interests of public policy for Dr. Ellinghaus, a non-U.S. citizen who has not lived in the U.S. for three (3) years, to nevertheless be haled into a New York Court during a global pandemic.

In addition, Plaintiffs have failed to demonstrate sufficient service of process on Dr. Ellinghaus.  While Plaintiffs sent one email and mailed a hard copy of the Summons and Complaint to Dr. Ellinghaus's physical address in Germany, they have not demonstrated that these methods of service are sufficient under the Hague Convention (they are not).  In fact, Plaintiffs have not alleged that they made one single attempt to serve Dr. Ellinghaus pursuant to the rules of the Hague Convention before attempting to circumvent these rules via alternative means of service.  Beyond the issues of personal jurisdiction noted above, Plaintiffs must be required to comply with the Hague Convention to effectuate proper service upon Dr. Ellinghaus.

For these reasons, and those set forth below, the Complaint should be dismissed as against Dr. Ellinghaus.

## II.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[2]

Dr. Ellinghaus, a German citizen, is a former employee of PIMS Co., a subsidiary of GM, which is incorporated in Delaware with its principal place of business in Detroit, Michigan.  *See* Declaration of Dr. Uwe Ellinghaus ("Ellinghaus Decl.") at ¶¶ 5-6.  In November of 2013, Dr. Ellinghaus obtained an O-1 work visa and moved to New York from Germany to work for PIMS Co., where he was assigned to work with GM's Cadillac brand.  Ellinghaus Decl. at ¶¶ 7, 9.  At

---

[2] When deciding motions to dismiss made under Rules 12(b)(2) and 12(b)(5), courts may consider materials beyond the pleadings.  *Weerahandi v. Am. Statistical Ass'n*, No. 14-cv-7688, 2015 WL 5821634, at *2 (S.D.N.Y. Sept. 30, 2015) (finding that the Court may "[r]ely on materials that are outside the pleadings, including any affidavits submitted by the parties."); *Mende v. Milestone Tech., Inc*., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) ("In considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction.") (internal citations omitted)

the time, GM's Cadillac brand team was transitioning from Michigan to New York.  Wallace Decl. at ¶ 4; Ellinghaus Decl. at ¶¶ 6-8.  For the first 18 months of his employment with PIMS Co., Dr. Ellinghaus's role was based in Detroit, Michigan—although Dr. Ellinghaus resided in New York where he was assigned.  Ellinghaus Decl. at ¶ 10.  Dr. Ellinghaus left his position with PIMS Co., on November 30, 2017 and thereafter returned to Germany in February, 2018, where he lives and works to this day.  Ellinghaus Decl. at ¶¶ 8.  Dr. Ellinghaus has not lived in New York in almost three years, nor does he presently have any intent to return to the United States to live or work.  Ellinghaus Decl. at ¶¶ 4, 11.

Dr. Ellinghaus has not had any significant contact with New York since he left GM in November 2017.  Ellinghaus Decl. at ¶ 4-14.  He does not have a New York driver license.  Ellinghaus Decl. at ¶ 12.  He has no family in New York and owns no land in New York.  Ellinghaus Decl. at ¶ 12.  Dr. Ellinghaus has no immediate plans to travel to New York for personal or business reasons.  Ellinghaus Decl. at ¶ 12.  Even if he did wish to travel to New York, Dr. Ellinghaus could not because of international travel bans stemming from the COVID-19 pandemic.  Ellinghaus Decl. at ¶ 14.

Just as Dr. Ellinghaus's ties to New York are attenuated (at best) so are the other Defendants.  The Cadillac brand of GM is no longer located in New York, and GM retains its records at GM headquarters in Detroit, Michigan.  *See* Declaration of Shannon Wallace ("Wallace Decl.") at ¶¶ 4-5.[3]  Additionally, Defendants Tan, Hallett, and Wallace also no longer reside or work in New York.  Wallace Decl. at ¶¶ 6-7; Declaration of Melissa C. Rodriguez ("Rodriguez Decl.") at ¶ 4.  Plaintiffs have not, as of yet, alleged that they or any other witnesses currently live in New York, or that any evidence is located there.

---

[3] To the extent it's relevant, PIMS Co. is also headquartered in Detroit, Michigan.  Ellinghaus Decl. at ¶ 6.

The Complaint in this case was filed on April 17, 2020.  *See* Dkt. No. 1.  On April 28, 2020, Plaintiffs asked GM—who is not Dr. Ellinghaus's employer—to accept service on his behalf, a request which GM denied, since it was not authorized to accept service.  *See* Dkt. No. 54 at 1.  On July 14, 2020, Plaintiffs allege that they attempted to serve Dr. Ellinghaus on one occasion at an address in Manhattan.  Dkt. No. 54 at 1.  Thereafter, Plaintiffs wrote the Court on August 12, 2020, seeking an extension of time for service and to allow alternative service upon Dr. Ellinghaus via email.  *Id*.  The Court "so ordered" Plaintiffs' letter the same day, before counsel for the Defendants, or Dr. Ellinghaus who was not represented at the time, had the opportunity to oppose the request.  *See* Dkt. No. 55.  On August 14, 2020, Plaintiffs filed an "Affidavit of Service," attaching an August 13, 2020 email addressed to "uwe.ellinghaus@gmx.de" that attached a Summons, the Complaint, and other documents.  *See* Dkt. No. 56.  The next day, Defendants—with the exception of Dr. Ellinghaus, who was not yet represented by counsel in this action—responded to the Court's order, stating that Plaintiffs had made no attempt to serve Dr. Ellinghaus in Germany pursuant to the requirements of the Hague Convention.  *See* Dkt. No. 58.  In response, Plaintiffs submitted a letter devoid of any reference to any attempts of service compliant with the Hague Convention.  *See* Dkt. No. 59.  The Court subsequently ordered on August 17, 2020 that Dr. Ellinghaus could provide the Court with a mailing address where it would be "convenient to serve him" and that "Plaintiffs shall serve Mr. Ellinghaus at the address he provides." *See* Dkt. Nos. 60 and 61 at 2.  On August 26, 2020, Dr. Ellinghaus, now represented by the undersigned counsel, provided a physical address in Germany at which he could be properly served pursuant to the Hague Convention.  *See* Dkt. No. 62.  As of the date of filing, Defendants' counsel is aware of no attempt by Plaintiffs to serve Dr.

Ellinghaus by any permissible means available under the Hague Convention.  Rodriguez Decl. at ¶ 5.

III.   **ARGUMENT**

    A.    **There Is No Basis for Individual Liability under Most of Plaintiffs' Federal Claims, and Such Claims Should Be Dismissed under Rule 12(b)(6).**

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's allegations.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Accepting all factual allegations as true and discarding any implausible or conclusory assertions, the complaint must "raise a right to relief above the speculative level."  *Bell Atl. Corp.*, 550 U.S. at 555.  A Rule 12(b)(6) motion must be granted unless the plaintiff alleges "enough facts to state a claim to relief that is plausible on its face."  *Donahue v. Asia TV U.S.A., Ltd.*, 208 F. Supp. 3d 505, 512 (S.D.N.Y. 2016) (quotation and citation omitted).

At the outset, Plaintiffs may not bring any causes of action against Dr. Ellinghaus under Title VII, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA") or the Rehabilitation Act because none of these statutes provide for individual liability.  *See Cayemittes v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 641 F. App'x 60, 61-62 (2d Cir. 2016) ("[W]e affirm the dismissal of all Title VII claims against defendants sued in their individual capacities because Title VII does not provide for individual liability."); *Bernheim v. N.Y.C. Dep't of Educ.*, No. 19-cv-9723, 2020 WL 4383503, at *1 (S.D.N.Y. July 31, 2020) (same re ADA, ADEA or the Rehabilitation Act); *Ivanov v. N.Y.C. Transit Auth.*, No. 13-cv-4280, 2014 WL 2600230, at *5 (S.D.N.Y. June 5, 2014) (same re ADA); *Farzan v. Wells Fargo Bank, N.A.*, No. 12-cv-1217, 2013 WL 2641643, at *3 (S.D.N.Y. June 11, 2013) ("[T]he ADEA does not impose liability on individuals.").  As Plaintiffs cannot state a plausible claim under Title VII, the ADEA, the ADA, or the Rehabilitation Act against Dr. Ellinghaus, those claims

against Dr. Ellinghaus should be dismissed as a matter of law pursuant to Rule 12(b)(6).[4]

**B.      Dismissal under Rule 12(b)(2) Is Proper Because Asserting Personal Jurisdiction over Dr. Ellinghaus Would Not Comport with Due Process.**

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "While a plaintiff's well-pleaded factual allegations are ordinarily accepted as true in evaluating his prima facie jurisdictional case . . . the Court need not credit conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation . . ." *Senese v. Hindle*, No. 11-cv-0072, 2011 WL 4536955, at *7 (E.D.N.Y. Sept. 9, 2011), *report and recommendation adopted*, No. 11-cv-0072, 2011 WL 4529359 (E.D.N.Y. Sept. 28, 2011) (internal quotes removed) ("[A] plaintiff's proffer of some evidence is not sufficient; rather, to survive a pre-discovery motion to dismiss for lack of jurisdiction, the plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction.") (emphasis added) (internal quotations removed). To do this, a plaintiff must provide evidence that there is a ". . . statutory basis for personal jurisdiction . . . and that the exercise of personal jurisdiction . . . comports with constitutional due process principles." *Seabrooks v. Brown*, No. 18-cv-10155, 2019 WL 5450445, at *2 (S.D.N.Y. Oct. 24, 2019) (internal quotes and citations removed) (emphasis added); *Metro. Life Ins. Co.*, 84 F.3d at 567.[5]

---

[4] For this same reason, all of the federal claims against Tan, Lee, Wallace and Hallett should also be dismissed.
[5] "Personal jurisdiction over a non-domiciliary defendant in a diversity or federal question case is determined by reference to the law of the state in which the court sits." *Senese*, 2011 WL 4536955, at *6; *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp. 2d 615, 620 (S.D.N.Y. 2013). As the Court is located in New York, the "statutory basis" for personal jurisdiction is grounded in New York law and is codified at the New York Civil Practice Law and Rules ("CPLR") CPLR § 301 and CPLR § 302. *Senese*, 2011 WL 4536955, at *6; *Buccellati Holding Italia SPA*, 935 F. Supp. 2d at 620; *Seabrooks*, 2019 WL 5450445, at *2 (noting that under New York law, statutory jurisdiction may exist under CPLR § 301 or CPLR § 302).

As set forth below, even if Plaintiffs can show that Dr. Ellinghaus satisfies the requirements of New York's long-arm statute,[6] they still must show that asserting personal jurisdiction would not violate Constitutional Due Process—a burden which Plaintiffs cannot bear. *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (finding that to satisfy the Due Process Clause a defendant's contacts with the state must be such that it would "not offend traditional notions of fair play and substantial justice" to require the defendant to litigate in the forum); *Realuyo v. Villa Abrille*, No. 01-cv-10158, 2003 WL 21537754, at *11 (S.D.N.Y. July 8, 2003), *aff'd sub nom.*, *Realuyo v. Abrille*, 93 F. App'x 297 (2d Cir. 2004) ("Thus, even if this Court could exercise personal jurisdiction over the defendants pursuant to New York law, doing so would violate the constitutional need to be mindful of traditional notions of fair play and substantial justice.").

This Due Process analysis has two components—both of which must be met.  In order for personal jurisdiction to attach to Dr. Ellinghaus, Plaintiffs must show that Dr. Ellinghaus has sufficient "minimum contacts" with New York and also satisfy a "reasonableness" analysis.  *See Outdoor Partners LLC v. Rabbit Hole Interactive Corp.*, No. 13-cv-1797, 2013 WL 6503525, at *5 (S.D.N.Y. Dec. 9, 2013) ("There are two components to the due-process analysis: 'minimum contacts' and 'reasonableness.'").

Importantly, even assuming Plaintiffs could establish the "minimum contacts" prong, any exercise of personal jurisdiction must satisfy this "reasonableness" analysis—an analysis which is not met here.  *Outdoor Partners LLC,* 2013 WL 6503525, at *6 ("Even if defendants did have

---

[6] For instance, sections CPLR § 302(a)(2) and CPLR § 302(a)(3) of the New York long-arm statute—which refer to actions that ring in tort—do not apply here because Plaintiffs' allegations of discrimination are not torts. *Weerahandi*, 2015 WL 5821634, at *4 ("[P]laintiff's discrimination claims are not torts.") (dismissing § 1981, § 1983, NYSHRL, and NYCHRL claims for lack of personal jurisdiction).  Further, CPLR § 302(a)(4) cannot form a basis for personal jurisdiction because Dr. Ellinghaus owns no land in New York.  Ellinghaus Decl. at ¶ 12.

sufficient minimum contacts with New York, the exercise of personal jurisdiction in this case

would not comport with our traditional conception of fair play and substantial justice—that is,

whether it is reasonable under the circumstances of the particular case.") (internal quotes

omitted).  The Supreme Court has held that the court must evaluate the following factors as part

of this "reasonableness" analysis: "(1) the burden that the exercise of jurisdiction will impose on

the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's

interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in

obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states

in furthering substantive social policies." *Metro. Life Ins. Co.*, 84 F.3d at 568 (*citing Asahi

Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 113 (1987)).  As

demonstrated below, these five factors weigh against the exercise of personal jurisdiction over

Dr. Ellinghaus.

1.    The Burden Imposed on the Defendant

With regard to the first factor, the burden on the defendant, Dr. Ellinghaus, a German

citizen, will be greatly burdened by having to travel to the United States to defend himself, and—

as the case continues—participate in discovery and a potential trial.  *Realuyo*, 2003 WL

21537754, at *8 ("Finding the time and money to travel to New York for a potentially lengthy

court action would certainly impose a great burden on these defendants.").  Dr. Ellinghaus is not

merely located in New Jersey, or even in California; he lives and works in Germany and has not

lived in New York (or the United States) for almost three years.  Ellinghaus Decl. at ¶¶ 4, 9;

*Asahi Metal Indus. Co.*, 480 U.S. at 114 ("The unique burdens placed upon one who must defend

oneself in a foreign legal system should have significant weight in assessing the reasonableness

of stretching the long arm of personal jurisdiction over national borders."); *RLB & Assocs., Ltd.*

*v. Aspen Med. Pty.*, No. 2:15-cv-123, 2016 WL 344925, at *7 (D. Vt. Jan. 27, 2016) (dismissing

claims for lack of personal jurisdiction even where "the conveniences of modern communication

and transportation [have] ease[d]" the burden on a nonresident defendant because, "in this case,

Defendants are not located in an adjoining state or, in the case of Defendant Aspen Medical Pty.,

even in an adjoining country.") (emphasis added).  Further, Dr. Ellinghaus does not have any

family in the United States, is not a citizen of the United States and owns no land in New York—

nor does he even possess a New York driver license.  Ellinghaus Decl. at ¶ 12.  Moreover, Dr.

Ellinghaus currently has no plans to visit the United States, nor could he, due to current

international travel restrictions put in place due to the COVID-19 pandemic.  Ellinghaus Decl. at

¶¶ 13-14.  Accordingly, the significant burden imposed on Dr. Ellinghaus weighs against the

exercise of personal jurisdiction.

## 2.    The Interests of the Forum State

While courts have found that states have an interest in adjudicating civil rights cases for

their citizens, Plaintiffs have not alleged that they are current residents of New York City or New

York State.  While the Complaint does allege that Plaintiffs were "at all relevant times . . . a

resident . . . in the State of New York" (Compl. ¶¶ 13, 20), Plaintiffs have not averred that they

are current residents of New York.  *See Realuyo*, 2003 WL 21537754, at *1 (dismissing

complaint for lack of personal jurisdiction, after noting that "[t]he plaintiff claims to have

recently moved to New York after his home in New Jersey burned down, but he does not

indicate whether this is a temporary arrangement or one that will lead to New York becoming his

place of domicile.").  Unless Plaintiffs can show that both Cunningham and Ross are current

residents of New York, the state's interest in adjudicating this case is mitigated.

3.     Plaintiffs' Interest in Obtaining Relief

Finding a lack of personal jurisdiction for claims against Dr. Ellinghaus would not prevent Plaintiffs from obtaining relief against other Defendants.  *See Outdoor Partners LLC,* 2013 WL 6503525, at *6 ("Finally, in consideration of the third factor, <u>declining to exercise jurisdiction in this case will not prevent plaintiff from obtaining relief, because plaintiff's case against the corporate defendant . . .  will nonetheless proceed in this Court</u>.") (emphasis added). This is all the more noteworthy because, as noted above (*see* Section III(A), *supra),* Plaintiffs cannot proceed against Dr. Ellinghaus in his individual capacity under Title VII, the ADA, the Rehabilitation Act, or the ADEA in the first place.  *See Cayemittes,* 641 F. App'x at 61-62; *Ivanov,* 2014 WL 2600230, at *5; *Bernheim*, 2020 WL 4383503, at *1.  Accordingly, this factor further supports dismissal for lack of personal jurisdiction over Dr. Ellinghaus.

4.     The Judicial System's Interest in Efficiency

Plaintiffs have not shown that it would be efficient to litigate their claims against Dr. Ellinghaus in New York; in particular, they have not alleged and cannot show that the majority of witnesses or evidence is likely to be located in New York (it is not).  *Metro. Life Ins. Co.,* 84 F.3d at 574 ("In evaluating this factor, courts generally consider where witnesses and evidence are likely to be located."); *RLB & Assocs.*, 2016 WL 344925, at *8 ("In evaluating whether the exercise of personal jurisdiction will result in the efficient administration of justice, the court generally consider[s] where witnesses and evidence are likely to be located.  . . .  Plaintiff asserts that all of [its] supporting witnesses and evidence are located in Vermont[,] . . .  but it has not identified any specific witnesses or evidence located in Vermont.  In contrast, Defendants have claimed with some specificity that all of their potential witnesses are located outside of Vermont.") (internal quotations and citations omitted).  To start, many of the other individually named Defendants are no longer located in New York.  Defendants Tan, Hallett, and Wallace do

-10-

not currently reside in New York.  Wallace Decl. at ¶¶ 6-7; Rodriguez Decl. at ¶ 4.  Further, GM

has been, and continues to be, headquartered in Detroit during the relevant period, and the

Cadillac brand, for which both Plaintiffs worked, is no longer located in New York, thus much of

the relevant evidence would likely be located in Detroit as well.  Wallace Decl. at ¶¶ 4-5;

*Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*, No. 03-cv-1681, 2004

WL 2199547, at *17 (S.D.N.Y. Sept. 29, 2004) (finding that there was no personal jurisdiction

"[a]lthough some documents and witnesses may be located at JP Morgan in New York.").

Finally, Plaintiffs have not alleged whether they or any other relevant witnesses are current

residents in New York—or that any other evidence relevant to their claims is located within New

York.  Accordingly, this factor also favors dismissal of Dr. Ellinghaus for lack of personal

jurisdiction.

            5.      Substantive Social Policy

        Finally, the fifth factor, public policy, supports dismissal of Dr. Ellinghaus as well.

Indeed, New York has a demonstrated public policy against international travel due to the

COVID-19 Pandemic, as evidenced by the current travel advisory requiring a fourteen day

mandatory quarantine for many international travelers.[7]  Above and beyond this, Dr. Ellinghaus

likely could not travel to the United States under U.S. law, for similar reasons.  Ellinghaus Decl.

at ¶ 14.  Unless Plaintiffs can articulate a public policy that weighs in their favor, this factor

should also favor a finding of no personal jurisdiction over Dr. Ellinghaus.

        For these reasons, the factors outlined by the Supreme Court in *Asahi* demonstrate that it

would be "unreasonable" to exercise personal jurisdiction over Dr. Ellinghaus and that such an

---

[7] New York State Exec. Ord. No. 205.1 of Sept. 28, 2020, https://www.governor.ny.gov/sites/governor.ny.gov
/files/atoms/files/EO_205.1.pdf, (last visited Sept. 30, 2020).

exercise would violate the Due Process Clause.  *Metro. Life Ins. Co.*, 84 F.3d at 568; *Asahi Metal Indus. Co.*, 480 U.S. at 113.  Accordingly, Dr. Ellinghaus should be dismissed from this case.

### C.    Dismissal under Rule 12(b)(5) Is Proper as Service via Email or Mail in Germany Is Not Sufficient.

In addition to a lack of personal jurisdiction over Dr. Ellinghaus, Plaintiffs are unable to demonstrate that their attempts at service of process on Dr. Ellinghaus are sufficient to survive a motion to dismiss under Rule 12(b)(5).  As with a motion to dismiss for lack of personal jurisdiction, it is Plaintiffs' obligation to demonstrate that service was proper under Rule 4. *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002) ("Once a defendant raises a challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy . . . Conclusory statements are insufficient to overcome a defendant's sworn affidavit that he was not served. . . . If service of process was not sufficient, the Court has discretion to dismiss the action, but dismissal is not mandatory.").  Because Plaintiffs have not shown that they have made even a single attempt at proper service under the Hague Convention, and because alternative service via mail is not proper service in Germany, their claims against Dr. Ellinghaus should be dismissed.  At a minimum, Plaintiffs should be required to serve process on Dr. Ellinghaus in a manner allowed by the Hague Convention before requesting alternate service.

### 1.    Alternative Service by Mail or Email Is Improper Where Plaintiffs Have Not Attempted to Effectuate Service under the Hague Convention

Rule (4)(f)(3) provides that "unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States . . . by other means not prohibited by international agreement, as the court orders."  Rule (4)(f)(3) However, before service via mail or email is permissible, "courts in this Circuit generally impose two additional

-12-

threshold requirements before authorizing service under Rule 4(f)(3): (1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." *Devi v. Rajapaska*, No. 11-cv-6634, 2012 WL 309605, at *1-2 (S.D.N.Y. Jan. 31, 2012) (denying plaintiff's motion for alternate service where no attempt has been made to serve a defendant under the Hague Convention after noting that "importantly . . . plaintiff has not attempted to serve defendant through the Hague Convention, the traditional mechanism for effectuating service abroad."); *Live Brands Holdings, LLC v. Gastronomico Gracias A Dios*, No. 1:20-cv-01213, 2020 U.S. Dist. LEXIS 84584, at *2-3 (S.D.N.Y. May 13, 2020) (denying motion for alternative service where "Plaintiff does not argue that the Hague Convention is inapplicable here and has not justified its failure to attempt to effect service under the Hague Convention.").

Indeed, the Hague Convention provides a number of permissible avenues for Plaintiffs to serve Dr. Ellinghaus, none of which have been attempted to date. *See, e.g., Live Brands Holdings*, 2020 U.S. Dist. LEXIS 84584, at *4 ("The Hague Convention provides for several alternate methods of service: (1) service through the Central Authority of member states; (2) service through consular channels; (3) service by mail if the receiving state does not object; and (4) service pursuant to the internal laws of the state."); Rodriguez Decl. at ¶ 5. Plaintiffs must demonstrate that they have attempted to effectuate service on Dr. Ellinghaus through those avenues, and failed, before it becomes clear that the Court's intervention here is necessary rendering alternative service viable. *Advanced Aerofoil Techs., AG v. Todaro*, No. 11-cv-9505, 2012 WL 299959, at *2 (S.D.N.Y. Jan. 31, 2012) ("Here, the Hague Convention's procedures for service are mandatory because Switzerland and Germany, the countries in which Plaintiffs sought to serve the documents on the foreign defendants, are signatories to that Convention");

-13-

*see also* Advisory Committee Notes to 1993 Amendment to Rule 4(f) ("Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service."); *Live Brands Holdings*, 2020 U.S. Dist. LEXIS 84584, at *2 (denying motion for alternative service and concluding that "[b]ecause Plaintiff has not explained why service need not or should not be effected under the Hague Convention, these motions are denied . . ."); *cf.* *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 330-32 (S.D.N.Y. 2015) (allowing alternative service via email where, unlike here, "Plaintiff timely attempted service through the Hague Convention; has made multiple queries to the Chinese Central Authority; and has diligently kept the Court apprised of these efforts.").

      2.     <u>Alternative Service by Mail Is Not Permissible in Germany under Rule 4(f)(3) Because It Violates the Hague Convention</u>

Alternative service is only permitted under Rule (4)(f)(3) if it is not "prohibited by international agreement."  Rule (4)(f)(3) ("Unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States . . . by other means <u>not prohibited by international agreement</u>, as the court orders.") (emphasis added). However, because Germany has objected to this method of service under the Hague Convention, this method is "prohibited by international agreement."  *Sulzer Mixpac AG,* 312 F.R.D. at 331 (denying request to allow alternative service by mail under FRPC 4(f)(3) in China, which has objected to service by mail under the Hague Convention); *Advanced Aerofoil Techs., AG*, 2012 WL 299959, at *2 ("Plaintiffs here request that the Court issue an order allowing them to serve the relevant documents by international courier.  However, both Switzerland and Germany have explicitly objected to service through postal channels.").  Dr. Ellinghaus has provided Plaintiffs with a physical address where he can be properly served under the Hague Convention (*see* Dkt. 62) via a central authority or otherwise.  Merely mailing a copy of the summons and

-14-

Complaint—as Plaintiffs have done here—is simply not proper service under the Hague convention.

Accordingly, the Complaint should be dismissed against Dr. Ellinghaus, or at the very least, Plaintiffs should be required to properly serve Dr. Ellinghaus in a manner compliant with the Hague Convention before requesting alternative service via other means.

## IV. <u>CONCLUSION</u>

For all of the foregoing reasons, Dr. Ellinghaus respectfully requests that this Court grant his motion to dismiss.

Dated: October 8, 2020

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By:   <u>*/s/ Melissa C. Rodriguez*</u>
    Melissa C. Rodriguez
    John P. Guyette

101 Park Avenue
New York, NY  10178
Tel: (212) 309-6000
Fax: (212) 309-6001
melissa.rodriguez@morganlewis.com
john.guyette@morganlewis.com

*Attorneys for Defendants Uwe Ellinghaus,*
*General Motors LLC, Melody Lee, Nathan Tan,*
*Shannon E. Wallace, and Tonya Hallett*

-15-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused to be served by ECF a true and correct copy of this

Memorandum of Law in Support of Defendant Uwe Ellinghaus's Motion to Dismiss Plaintiffs'

Complaint on this 8th day of October, 2020, on all counsel of record.

<u>*/s/ Melissa C. Rodriguez*</u>
Melissa C. Rodriguez